Alright, the next case before the court is case number 153143, Sharpe v. the EPA. It's a case arising from a case in the U.S. It's an indefinite suspension case in which the only allegation of a crime occurred in 1996. That was 17 years prior to the imposition of the indefinite suspension. This court has looked at indefinite suspensions in Dunnington and Morrison. In Dunnington, there is a four-pronged test to evaluate an indefinite suspension. First and foremost is the intent to protect the public and agency personnel. In this case, the crime occurred in 1996. There had been 17 years of no problem of the public being protected or agency personnel being protected. So with a 17-year history of no problem, there certainly wasn't an issue of an indefinite suspension in 2013. What do you mean a 17 years of no problem? There were violations of community supervision, correct? There were never any proven violations, Your Honor. Never. Well, there were charged violations and he then consented to an extension of the supervision, correct? That's correct. Does the length of time of that prior crime matter here? Yes, I think it does, Your Honor. It matters on several levels. Like I said, the first issue is the indefinite suspension in which there's been a criminal indictment and there's been an accusation that a court has determined there's reasonable cause for the crime that's been committed. The issue is to protect the public and the agency personnel at that time before the facts are known. In this case, the facts were known in 1997 when he signed a judicial confession and said, here's what I did. I admit I did this crime last year. At that point, to me, there's no issue for indefinite suspension at that point in time. So, yeah, I think there is a gap. And in particular in this case, he was on probation in 2007. He wasn't on probation in 2013. Was it 2007 or 2012? 2007, Your Honor. His counsel argued in the criminal case that it was 2012. And the counsel, quite frankly, missed another point they could have used. If you look in the appendix at A66, the law at the time, there was only a 10-year limitation on how long you should be in community supervision. That was changed on September 1st of 1997, but that didn't apply to this case. So under the law in Texas, it was 2007. So, like I said, that's at A66 and A67. But at the time, the agency is looking at this. Right. The agency has a charge of violation. It had consents to extension of supervision. And there was no dismissal at that point based on this underlying interpretation of Texas law, whether it's yours or his criminal counsel's underlying interpretation of Texas law, correct? I think the law speaks for itself, Your Honor. The agency could have done the research. It's the criminal code of Texas, and it's clearly stated in there. So the fact that he consented to it doesn't change the law. The law is it's 10 years. If the agency had done, in my opinion, its due diligence, it would have known that. So you're saying the agency can't proceed on the facts as law enforcement present them to the agency? I think under Dunnington, they have an obligation to do more than that. And in this case, it's a matter of law. It's just do the research. So they have the obligation to do research even when the employee doesn't raise the question? I think so. Absolutely. The ignorance of the law is no excuse. The whole prosecutorial system in Dallas and the defense bar just fell asleep on this one. The statute is clear. It's 10 years is the maximum. And it was changed in 1997 to have one five-year extension, and that's where it would have gone in 2012, which you pointed out, Your Honor. So under either interpretation, they're wrong. And like I said, the law is clear. It's 2007. But even if you got the one extension, that ended in May of 2012. So I think there is an obligation under Dunnington to do some research. Even though Sharp never raises the issue, and Sharp himself thought he was still under community service. That's correct, Your Honor. The law is the law. They didn't do any research on this point. And the other issue gets to, that you also raised, is the allegations. They're not allegations of any crimes. And that's where I think the respondent's case falls apart. The allegations of probation violations are not crimes. So you go back to, Your Honor, your question. But the probation violations could have resulted in, at least based on the law as everyone believed it existed at the time, could have resulted in incarceration based on the original charges, correct? Right. But I don't think that's the issue of the indefinite suspension, Your Honor, as I read Dunnington. The point is to protect the public and agency personnel when there's been an allegation of a serious crime. The allegation of the crime was in 1996. Right. There's been no problem for the next 17 years. But he didn't get a sentence and then community supervision after he served his sentence. What he got was you participate in this community service in lieu of imprisonment, but if you violate it, you go to prison. You can't. There's a hearing itself. Based on the original charge. There's a hearing itself. And all they had to have is reasonable cause to believe that he could be imprisoned. I mean, they certainly had reasonable cause to believe he had committed a crime at one point, correct? In 1996. Right. And at the time that all of these events occurred, that they had reasonable cause to believe that he could go to prison based on the probation violation. I don't think there is reasonable cause when the law is clear he wasn't on probation. Hadn't been for six years. And under the statute as it is today, there was one five-year extension. And that was 2012. So under either scenario, there was no reasonable cause. And like I said, what I want to focus on is I don't think going to prison is what triggers an indefinite suspension. The indefinite suspension is when there's been the allegation of a serious crime, which was 1996, and until we find out what exactly happened, we're on the side of protecting the public or agency personnel. But it wasn't an allegation. Didn't he admit to the crime? In 1997, he signed a judicial confession and admitted to it. And he also understood that a violation of community supervision could result in imprisonment based on that admission. Yes. Yes. If he was still on probation. Like I said, in this case, he wasn't. But the point is you're protecting the public and the agency when we don't know. And what I'm offering the court is when he signed that judicial confession in 1997, we know exactly what he did. If the agency wanted to take removal action based on that, it had every reason to if they found nexus. You know, that's the third consideration here in Dunnington, which we'll get to. But at that point, the agency knew he did it. He inappropriately touched a minor. That's a second-degree felony in Texas. But at that point, they didn't have reasonable cause to believe that he was going to go to prison. But the reasonable cause to believe to prison is not what drives it in terms of protecting the public or the agency. The point is when the first crime happens, the fact he might go to prison, to me, is meaningless. We knew in 1997 what he did. If the agency says we can't have you on our rolls because you did this, like Dunnington, he was a border patrol officer and he had unsupervised access to kids and women doing his job, you know, we're going to fire you for that. The fact he might go to prison doesn't protect any public interest. It doesn't protect the public at all. That's not what indefinite suspension is for. It's to protect you when there's been the allegation of a serious crime until we know what happened. In this case, we know exactly what happened back in April of 1997. And there was no further investigation of what he did, so there's no point in indefinite suspension. At that point, once the facts are known, the agency needs to make a decision to remove the employee or not. The indefinite suspension is when that first comes up of the crime itself. Is it that serious? Is it a connection to your job? In this case, there is no connection. He works for a scientific agency which monitors air pollution and water pollution and soil contamination. He had no contact with children. The agency found that there was an access, that there was a connection to the job because the supervisors, his supervisors lost trust and confidence in him. That's how they made the connection. With all due respect, Your Honor, in every adverse action, that is said by agency personnel. In this case, the incident happened in 1996. You had 17 years of no problem. He was a good employee. He had a good record. So to just say that, you know, 17 years after the fact, I don't think it's, you know, the nexus is, you know, there's ways to prove it. Here, there's 17 years of proof there was no problem related to his conduct back in 1996. So the fact that they say that, that's just something they want to say to win the case. I mean, how do you say there was no proof? There was a probation violation? There was a continuation of the supervision? No, Your Honor. Sorry. There was never any proof of probation violation in this case. There is no proof of that whatsoever. None. Well, there were serious allegations of a probation violation. And instead of going through the hearing, he consented to an extension of his community supervision, which would have been a better result for him than going to prison the first time around, right? Or getting, proving to commit, you know, the violation. I mean, I think in the criminal justice system, and I'm not a criminal lawyer, Your Honor, but that's what you often do. I mean, the fact that he stays on, you know, this community supervision for another couple years isn't seen as that big a deal. Well, you're right. There is much more of a risk, but there's also the chance he would have proved there was no violation. So there is absolutely no proof that he ever violated his probation. And the fact that he consented to it is a pretty common thing, I think, in the criminal justice system, where people don't go to court and they take something because you don't want to run the risk. They didn't prove any. There was never any proof of a violation. So the point is, the only thing you've got is this 1996 crime, which you did, and then you wait 17 years to impose an indefinite suspension. And you don't impose an indefinite suspension if you might go to jail. You do it before the facts are known. So in my opinion, under the facts of this case, in 1997, when he signed that judicial confession, we knew exactly what he did. And if the agency said, hey, we find this, and this goes to your point, Judge Rayner, this is so egregious that we've lost confidence in you, then they needed to take an action back in 1997. The facts have been, in this case, they knew about the issues back in at least 2000 at the very latest. So they knew about it for 13 years. The indefinite suspension only comes into effect when there's this allegation of a serious crime, which I think what they're using the word serious is that it could result in imprisonment, and then that there is this nexus. The statute talks about imprisonment. Right. Yeah. And that's the notice requirement of 7513B1 is what we're looking at there. But the point is there has to be that allegation of a serious crime. And going back 17 years, I think that's arbitrary and capricious. Okay. We'll save the rest. You'll have three and a half minutes for rebuttal. Okay. Thank you. May it please the Court. The Court should affirm the Board's decision upholding EPA's indefinite suspension of Mr. Sharpe. The Board's decision was rational and supported by substantial evidence that EPA had reasonable cause to believe that Mr. Sharpe had committed a crime for which he could be imprisoned. The petitioner argues that there was a 17-year-old offense for which Mr. Sharpe was being put on indefinite suspension, but that mischaracterizes the record that was before the agency in 2013 when it imposed the indefinite suspension. In 2013, Mr. Sharpe had been arrested. The police had come to EPA to execute an arrest warrant. Upon his arrest, the agency instituted an investigation to determine what was going on with the police coming to their office and looking for Mr. Sharpe. They learned that Mr. Sharpe was on probation, that the state, the DA, district attorney, a criminal prosecutor, had filed a motion to revoke his probation, that he was arraigned in front of a magistrate judge, he was held without bond, that the arraignment indicated that there was an offense of probation violation, and it indicated that he had read his rights, he had the right to counsel. What about the fact that in 1997, he admitted to a crime, and there was the potential for imprisonment because any violation of community service could have resulted in that? Why wasn't he indefinitely suspended back then? This is not directly in the record, but I understand that the agency did not know that Mr. Sharpe entered into the judicial confession in 1997. My understanding is that they did not find out about that until 2000. And he did not have, between 1997 and 2000, any kind of misconduct. So there was no basis for the agency to take any action at that time. However, in 2006, he was given a 60-day suspension for misconduct. And then in 2013... Was the 60-day suspension for misconduct related in any way to the 1997 conviction? No, it wasn't, Your Honor. What I was going to say, I'm sorry, was that in 2013, when the agency finds out that he's been arrested, that the state is moving to revoke his probation, it's at that time that they find out that in 2007 and 2012, he'd been arrested for other probation violations, and he consented to extensions of his probation. So in 2013 is when the landscape changed for the agency. He might have been an acceptable employee in 2000 when they first found out about it, but by 2013, it's not the same story. And the probation revocation proceedings were... There were serious allegations that he was failing to pass a lie detector test. And there was the witness statement indicating that he had admitted to the witness to engaging in misconduct and that he wasn't passing the lie detector test on questions about whether he was engaging in inappropriate contact with minors. So in 2013, it's not the same facts before the agency as what they had in 2000 when they first learned about the judicial confession. Do you agree that in Texas, a consent to a continuation of community supervision doesn't require an agreement that the probation violations occurred? There was nothing in the record to indicate that Mr. Sharp was conceding that the reasons why he was originally arrested in 2007 and 2012 was that he was conceding he had engaged in that conduct. He did consent to enlarging the periods of his probation. But the government's position is that that is not relevant to this court's inquiry as to whether the agency had reasonable cause in August of 2013 to believe that he had committed a crime because the agency looked at the official Texas court docket and saw that Mr. Sharp had consented to the enlargements and saw that he was still on probation. And then when Mr. Sharp responded to the agency's notice that they were proposing the indefinite suspension, he never challenged that he wasn't on probation. And in fact, his criminal lawyer didn't raise the issue with the Texas Court of Appeals, with the Texas State Court until 24 days after the suspension was imposed. So because in this court's case in Rhodes, the court looks at the facts that were available to the agency at the time that it took the action and doesn't try and base or evaluate the agency's actions on hindsight, which is what the petitioner is asking the court to do here, by arguing that he wasn't, as a matter of law, on probation in 2013. How do you respond to your friend's argument that actually the agency should have been alerted to the fact that it seemed weird that after this 1997 conviction that the supervision was still ongoing, and given such a lengthy amount of time, the agency should have researched Texas law to see whether or not there wasn't some problem with his continued supervision? Mr. Sharpe was represented by a criminal attorney when he appeared and surrendered to the Texas court in August of 2013. If it was incumbent upon the agency to do research weeks later in imposing an indefinite suspension, one would expect that his own attorney would have been up to speed. A criminal defense attorney would have been aware that his client didn't need to surrender on a probation revocation charge because, as a matter of law, his client was not actually supposed to still be on probation. I think the government believes it's reasonable for the agency to have relied upon what was in the official court docket in Texas, which showed that he was still on probation and that he consented. Where do we find in the record evidence about the witness or evidence that Mr. Sharpe had engaged in inappropriate conduct with a minor while on probation? That would be at page 844 of the record, Your Honor. Is that email? It's an email from John Larkin to Susan Chandler, who was the inspector general agent who conducted the investigation, and he cut and pasted an earlier letter that he had sent to Judge Burns. He cut and pasted that into an email to Susan Chandler, and she had interviewed him as part of the agency's investigation. But she says that he may be engaging in that conduct. And also, doesn't this email also show that Mr. Sharpe is denied violating his probation? It's denied admitting to violations of treatment but not to probation, but it does also say that he had not passed a lie detector test in the last four tries in six months regarding contact with minors to him or to them. And then in the second-to-last paragraph, the witness reports that he, being Mr. Sharpe, has admitted to touching the skin of the penis of three boys in sessions with myself and Stacy Dupler. And this was a document that the agency relied upon in assessing all of the facts that were presented to it when it made the decision to impose the indefinite suspension. With respect to the Nexus issue, Your Honors, the agency concluded that they had lost trust and confidence in Mr. Sharpe because the 2013 probation violation was not just the first time that he had had problems at the agency. The agency cited to the prior agreement with Mr. Sharpe, the settlement in 2007 that imposed the 60-day suspension on him, as well as their learning that he had twice been arrested in 2007 and 2012 for probation violations which resulted in the extensions. And so the agency lost confidence that Mr. Sharpe could, going forward, perform his duties at the agency without further interruption. If the Court has no further questions, then we respectfully request that the Court affirm the Board's decision. Thank you. Just a couple of things. When we talk about what was available to the agency back in August and September of 2013, I reiterate my point earlier that the Texas Code of Criminal Procedures was available to the agency. And if they had done just some fundamental research, they would have found out that the probation had ended in 2007. And even if the one-time extension of five years was legal, which it wasn't, that would have ended in May of 2012. And there was no chance to believe he would be imprisoned for any of this. The other thing we just talked about is that document on A44. We reject that in its entirety. And if there was any validity to that, he would have been charged again criminally. And there would be another issue. So he absolutely, adamantly refuses to accept any validity of that. And as I've stated, if that were true, I think there would have been criminal charges pressed against him. There weren't criminal charges because that was baseless. When we talk about the nexus here, once again, this is a scientific agency. He had no contact with children from 1992 when he started with the agency through this. There was never any contact. So when Dunnington talks about sufficient relationship to the employee's duties in the agency to promote the efficiency of the service, there's no connection at all. There's nothing like Dunnington. Dunnington is clear. He had unsupervised access to minors. Here, he had no access to minors. And the point I've been trying to make is you have 17 years of proof. There's never been a problem again. Sometimes people make mistakes and they learn from them. That's what you have in this case. He made a horrible decision in 1996. He paid for it and never had any allegation of criminal activity since then. So we're now coming up on now 20 years of no allegations of criminal activity. And certainly back in 2013, like I said, there was not that reasonable cause of requirement committed when the only crime was 1996. I think the 17-year gap does make it arbitrary and capricious. And especially in this case, he admitted it in 1997. So to me, like I said, the agency should have at that time, either in 1997 or if they didn't know about it until 2000, said, hey, we don't trust you anymore. Did he go in and tell the agency in 1997 that he was having these criminal problems? Judge, that is not in the record and I can speculate if you want me to, but I'd be speculating based on snippets of conversation. I think he told his first line supervisor, but nobody else. But that's for recollection on my part. Please don't take that. Yes, sir. Was this information divulged or come to light after the decision of the indefinite suspension had been made? I don't understand the question, Your Honor. The question about the potential violation of the probation and his failure to take a lie detector test. Did all that come to light after the decision for the indefinite suspension had been made? No, it was before. That's when they initially put out a warrant for his arrest by a magistrate in mid-August. On the 22nd, he found out about it and surrendered himself. And that's why they had the arrest warrant, was because he failed to take a lie detector test, failed to participate in group counseling, and failed to perform community supervision. So they knew about that way prior. Wouldn't that be evidence that could lead the agency to have a loss of trust and confidence in you? If it was valid, but it wasn't valid, Your Honor. He contested every point. When was it discovered it wasn't valid? It was after the decision had been made, right? Well, the point is, there's no proof that they occurred. There's allegations, but they're only allegations. And he denied all of them. And if that motion hadn't been successful, he would have had the opportunity to prove them. In the community supervision of vacations hearing, it's preponderance of the evidence, and they were gearing up for that. If the motion wasn't successful, but the motion was successful because the judge realized the community supervision had passed. So he was going to contest every one of those, and there was no proof that any of them were ever valid. But that still gets to the point, the only allegation of a crime was 1996, not anything in 2013 or 2012 or 2007. They were not allegations of crimes. And that's what Dunnington, as I read Dunnington, requires, is that allegation of a crime, which would trigger this. And I think the only confusion is, do we know what happened or not? And once we do know, and in this case it was 1997, it was a matter of public record that he admitted to it. This was public records that they found out, they could have found out years ago. In 2000, this Susan Chandler, the IG agent, looked it up and knew all about the case and told the division director. And they knew about it back in 2000. If they didn't do anything in 2000... Is he still on suspension? No, that suspension ended initially on November 21st. So what's the status now? The status of the hell is, the judge suspended throughout the case on October 31st. And the motion to throw it out wasn't filed until three weeks after the indefinite suspension. The motion to dismiss, the motion to throw it out, was not filed until three weeks after the indefinite suspension. Two weeks, maybe, Your Honor, somewhere there. The indefinite suspension, I think, occurred on the 12th of October. I think the motion was about the 25th of October, and the judge ruled on the 31st of October. So the judge threw it out and said, yeah, community supervision is passed. They kept him on suspension until November 21st. Then we appealed to the board, and the board said, you know, there's a separate issue here. When the judge threw it out under this board's case law in Rhodes and Richardson, you should have terminated the suspension on about October 31st. The agency has been doing that. They just issued a check last week that I think that part of the suspension from November 1st to November 21st is probably now history. And we're left with the indefinite suspension from October 12th to October 30th or November 1st. So that's the issue on the suspension itself. Okay. Thank you so much. The case will be submitted.